Battle, J,
Upon the facts agreed it appears that the petitioner had been enrolled as a private soldier* under the act of Congress, ratified the llth Feb., 1884, prior to the time when he became a driver of the mail stage from Morrisville to Pittsboro’. The question, then, is, whether a. mail contractor or driver of a post coach can claim exemption from military service, under the act of April 14th, 1863, by having become sueh after his enrolment as a soldier. The question arises under the last-mentioned act, because the act of February, 1864, expressly declares that nothing therein contained shall be construed as a repeal of it. Mail contractors and stage drivers were not mentioned among the classes of exempts contained in the act of 11th October, 1862, and the act ©f April, 1863, was passed, no doubt, to supply the omission.. The act is in *126 tbe following words : “'The Congress *of the Confederate States of America do enact, that the contractors for carrying the mails of the Confederate States shall be exempt ' from the performance of military duty in the armies of the Confederate States, from and after the' passage of this act, during the time they are such contractors: Pro-mded,”. &e. — Sec. % — “ That drivers.of post coaches and hacks for carrying the mails, onall routes where the weight of the mail requires that they should be carried in coaches or hacks, shall be exempt from military service in the armies of the Confederate States, from agid after the passage of this act, so long as they continue to be so employed as drivers: Provided,” &c. For the>petitioner it is contended that the terms of this act are broad enough to embrace his case, whether he was in the army or out of it, at the .time of his becoming the driver of a. stage coach, and a decision made by Judge Halyburton, of the, llistrict Court of the Confederate-States, ■ in. Virginia, is relied 'upon in support of it. On the other hand, it is insisted by the counsel for the defendant, that the act in question was- never intended to allow a soldier in service to exempt himself therefrom, by taking a mail ..contract, or being employed as a driver, and he relies upon the decision to that effect made by Judge Jovnes, 'of the Circuit Court of Petersburg, in 'Virginia. Adjudication's made in this State were also referred to by the counsel on both sides.
In this conflict of judicial authority, I feel myself at liberty to adopt the strong convictions of my own mind as tovwhat is the true construction of the act. All the acts ©f Congress called the conscription acts are, it must be confessed, strong war measures. They can only bé sustained, in point of authority, upon the unlimited power vested in the Confederate government, to declare war, and to -raise *127 and support armies ;aud in point of policy, they can only be justified upon the pressing exigencies ©f the country, struggling for national existence, with an enemy of vastly greater resources in all the means and appliancss of war. It was with a full knowledge of this condition of the country that the conscription acts ' of April and September, 1862, and the exemption act of October, 1862, as well as ’the cine now under consideration- of April, 1868, were passed. The manifest object of the conscription acts was tcj call into the military service of the government as many persons as possible, without interfering with the necessary industrial, educational and other great interests of the country ; and in favor of those interests the exemptions were granted. In mating those exemptions, I cannot discover in the acts any spirit to. extend them beyond the purpose for which they weie allowed. Persons' engaged in certain pursuits or occupations when the acts were passed, were not to be enrolled for military service ; but there is no indication of an intention strong enough' to show that if they were in the army, they were to be permitted to take themselves out of it; It is true, as Judge Halyburton says, that the words of the act exenap- • ting mail contractors and post coach drivers, are broad enough to embrace persons in the military service ; but that, I do not think, is the question. The true inquiry is, what did the law makers mean P Did Congress intend to let any person out of the army to perform a duty which could be performed quite .well by another person, though not quite so cheaply, while it was resorting to the ‘extremest measures to bring men into it P It must be admitted that the terms of the act may be satisfied by applying them solely to persons not enrolled for service when they become mail contractors or♦ mail stage drivers, and' *128 that construction must be adopted whenever we are satisfied that such was the intention of Congress. In the case of Bridgman vs. Mallett, I have stated the reason* which have led me to adopt that construction as the proper one, upon the aet of February 1*7 j 1864, and I think they apply with very nearly as much force to the other conscription, and their attendant exemption, acts.
My. opinion is, therefore, that the order, made in vacation to discharge the petitioner, must be reversed with costs, and that he should be remanded to the custody of-the defendant. •
Per Curiam, — Order reversed, and order to remand the petitioner to the custody of the defendant.